IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG 21 2017
CLERK, U.S. D[ISTRICT COURT]
By_____

UNITED STATES OF AMERICA

v.                                                   NO.: 4:17-mJ-701

ERIC JAMAL GRAYS          (01)
JAMES ROBERT ZERBE        (02)

## CRIMINAL COMPLAINT

I, the undersigned Complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

Beginning on or about July of 2017, in the Fort Worth Division of the Northern District of Texas, and elsewhere, defendants **Eric Jamal Grays** and **James Robert Zerbe,** and other known and unknown did knowingly and intentionally conspire with others known and unknown to the complainant to possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846.

I further state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and that this affidavit is based on my experience and my personal knowledge of the below described case, as well as interviews with and information received from Trophy Club Police Department Officers, and other Special Agents and Officers from other agencies.

1. On July 26, 2017, Trophy Club Police Department (TCPD) Officers received information regarding narcotics dealing activity being conducted at the Vineyard Apartments, 1500 Plantation Oaks Drive, Apartment 1504, Trophy Club, Texas, in Tarrant County, hereinafter referred to as the target apartment.

2.      According to the property manager, after defendant **Eric Jamal Grays**, hereinafter referred to as **Grays**, moved into the target apartment, witnesses observed an increase in vehicular traffic around the target apartment.

3.      A few days prior to the initial contact with TCPD, the property manager had visited the target apartment for maintenance of fire alarms. While inside the target apartment, the property manager observed a small clear baggy on the floor of the target apartment which contained white residue, along with several "AR rifles" located against the wall inside the target apartment. Additionally, a Vineyards Apartment maintenance worker had observed a pistol on one of the beds while he was working.

4.      The property manager advised that she had made contact with an unidentified female, who was not on the property lease, at the target apartment. The unidentified female confessed to the property manager that **Grays** had been dealing narcotics out of the target apartment.

5.      On August 11, 2017, TCPD received notification from a neighbor to the target apartment that he/she witnessed, throughout the day, potential narcotics activity at the target apartment due to the number of people coming in and out of the residence. Additionally, the neighbor observed an individual leave the target apartment with what appeared to be a firearm.

6.      Continuing on August 11, 2017, TCPD interviewed a cooperating defendant (CD) regarding the target apartment. According to the CD, **Grays** would sell narcotics from the target apartment that he received from his roommate, co-defendant **James Zerbe**, hereinafter referred to as **Zerbe**. The CD advised that **Grays** sold methamphetamine, marijuana, and Xanax bars, and recalled that **Grays** stored narcotics inside a manufactured Arizona Tea Safe/Stash Can. Additionally, the CD stated that **Zerbe** could move (sell) approximately

nine (9) kilos a day of methamphetamine, and as of August 11, 2017, at approximately 6:30 pm, **Zerbe** possibly had approximately half of that quantity of methamphetamine inside the target apartment. The CD also advised that **Zerbe** had anywhere between 200-1000 Xanax bars inside the target apartment.

7. On August 12, 2017, at approximately 3:30 am, Trophy Club Police Department executed a state search warrant for the target apartment. Items seized include, but not limited to:

   a. Recovered inside **Grays'** bedroom:

   i) A manufactured Arizona Tea Safe/Stash Can, which contained approximately 25 grams of suspected methamphetamine, separated into five baggies, and empty small baggies.

   ii) A black plastic tool box containing a scale; numerous empty, clear baggies of assorted sizes; and an empty eye drop vile.

   iii) Over 100 drug paraphernalia items to include but not limited to: used glass pipes; used glass bongs; used bowls; used mortar and pestle; and several containers with residue.

   iv) Over 1,400 rounds of assorted ammunition.

   b. Recovered from **Zerbe's** person:

   i) Approximately $5,580.00 USD.

   c. Recovered inside **Zerbe's** bedroom:

      i) Approximately 162 grams of suspected methamphetamine stored in several baggies containing various quantities, and recovered from a plastic cup next to **Zerbe's** bed.

      ii) Drug paraphernalia items to include but not limited to: scales; used glass pipes; used glass bongs; used glass bowls with residue; plastic containers with residue; bowl with large scoop with residue; butane torches; cutting board; clear baggies.

      iii) One (1) short-barrel AR style rifle, which was mounted on the wall next to **Zerbe's** bed; three (3) pistols; and one (1) revolver.

      iv) Assorted ammunition and high capacity magazines.

      v) Approximately $1,380.00 USD.

   d. Recovered from **Grays** and **Zerbe's** living room / common area:

      i) One (1) glass eye dropper container, approximately 3-4 inches tall, containing a thick, cream color gel/liquid, which presumptive tested positive for Fentanyl.

      ii) Various drug paraphernalia to include but not limited to: grinder; lighters; used bongs and glass pipes; and a used mortar and pestle.

      iii) Notebooks and ledgers.

8. Continuing on August 12, 2017, TCPD Detective Sergeant K. Burris interviewed K.W. who identified herself as **Grays'** girlfriend. After being read her Miranda Warning, K.W. agreed to talk to Sgt. Burris. K.W. admitted that **Grays** would use her car go to the

**Criminal Complaint – Page 4**

Keller area to pick up marijuana and Xanax. K.W. advised that **Grays** is not making anything [illegal] at the apartment. K.W. knew **Grays** had methamphetamine and had picked up and had sold methamphetamine, unknown quantities. K.W. confirmed that **Grays** has sold narcotics out of the target apartment. K.W. further identified which bedroom **Grays** resided.

9. On August 15, 2017, your Affiant and Sgt. Burris interviewed **Grays** who was in custody. After being read his *Miranda* Warning, **Grays** agreed to speak to your Affiant and Sgt. Burris. **Grays** confirmed that **Zerbe** resided in the master bedroom of the apartment and admitted that **Zerbe** smoked a lot of methamphetamine. However, **Grays** would not say whether **Zerbe** sold methamphetamine. **Grays** stated that K.W. "has nothing to do with this." **Grays** advised that after **Grays'** recent arrest by Flower Mound Police Department, K.W. cleaned out **Grays'** room and thought K.W. had thrown away everything that was "bad," to include anything that was in a converted Arizona Tea Can. **Grays** denied selling methamphetamine, marijuana and Xanax bars.

10. Continuing on August 15, 2017, your Affiant and Sgt. Burris interviewed M.V. who was in custody. After being read her *Miranda* Warning, M.V. agreed to speak to your Affiant and Sgt. Burris. M.V. had arrived at the target apartment around 4:00 pm on August 11, 2017. (Note: Surveillance Units observed M.V. depart the apartment complex with **Grays** around 3:20 am on August 12, 2017.) According to M.V., she had gone to the target apartment to smoke methamphetamine, which she received from **Grays**. M.V. advised that **Grays** brought the methamphetamine out in small shards in his hand to put in a bowl to smoke. M.V. stated that **Grays** smoked methamphetamine with M.V. M.V. stated that her friend S.H. would purchase personal use quantities of methamphetamine from **Grays**. While waiting outside of the apartment smoking a cigarette, M.V. recalled seeing **Grays'** white male roommate (previously identified as **Zerbe**) exit the apartment and briefly meet with two

(2) vehicles that had pulled up near the target apartment. M.V. observed a quick exchange which M.V. recognized as a narcotics sale. Additionally, M.V. recalled seeing another unidentified male arrive at the target apartment. M.V. advised that the unidentified male was in and out of the apartment, which M.V. recognized as a narcotics sale.

11. Based upon the above listed facts, your Affiant, J. Radd, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, believes that probable cause exists that each of the defendants, **Eric Jamal Grays** and **James Robert Zerbe,** and others known and unknown did knowingly and intentionally conspire with others known and unknown to the complainant to possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846.

8/21/2017
Date

J. Radd
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me and subscribed in my presence on this 21st day of August 2017, at 2:14 a.m./p.m. at Fort Worth, Texas.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

**Criminal Complaint – Page 6**